IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 454 LIFE SCIENCES CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-595-LPS |
| | ) | |
| ION TORRENT SYSTEMS, INC., | ) | |
| LIFE TECHNOLOGIES CORPORATION, | ) | |
| and THERMO FISHER SCIENTIFIC, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

Presently before the Court in this patent infringement action is Defendants Ion Torrent Systems, Inc. ("Ion Torrent"), Life Technologies Corp., and Thermo Fisher Scientific, Inc.'s (collectively, the "Defendants") motion to stay pending resolution of *inter partes* review ("IPR") of the patents-in-suit (the "Motion"). (D.I. 50) The Court GRANTS the Motion.

**I.    BACKGROUND**

Plaintiff 454 Life Sciences Corporation ("Plaintiff" or "454") alleges that Defendants infringe three of its patents: United States Patent Nos. 7,323,305 ("'305 patent"), 8,748,102 ("'102 patent"), and 8,765,380 ("'380 patent) (collectively, the "patents-in-suit"). (D.I. 17) Plaintiff seeks relief including damages and a permanent injunction. (*Id.* at 10-11)

**A.    The Patented Technology and Accused Products**

The technology at issue is focused on a technique called "emulsion PCR." Emulsion PCR allows for "simultaneously amplifying multiple nucleic acids, such as DNA, in a single reaction tube." (*Id.* at ¶ 12) Plaintiff alleges that the development of this process represented a

"major advance" in the field of DNA amplification because it allowed, for example, scientists to more rapidly and cheaply sequence DNA molecules than had been possible with prior DNA sequencing techniques. (*Id.*)

The three patents-in-suit claim certain embodiments of "emulsion PCR." (*Id.* at ¶¶ 12, 24, 33) The '305 patent relates to "a method and apparatus for determining the base sequences of DNA" and, more specifically, "to methods and an apparatus with which the base sequences of a genome can be amplified and determined automatically or semiautomatically." ('305 patent col. 1:35-39) The '102 and '380 patents both relate "to methods for amplifying nucleic acid templates from low copy number to quantities amenable for sequencing on a solid support such as a bead." ('102 patent col. 1:35-37; '380 patent col. 1:35-37)

Plaintiff alleges that various products sold by Defendants infringe the patents-in-suit. Specifically, Plaintiff points to Defendants': (1) machines for performing emulsion PCR and for sequencing the products of emulsion PCR; (2) chips designed to be used with such machines; (3) consumables (e.g., adapters, reagents, and barcode adapters) to be used with the machines and chips; and (4) technology to analyze data generated by emulsion PCR sequencing (collectively, the "Accused Products"). (D.I. 17 at ¶¶ 13-16)

### B. Litigation History

#### 1. Status of the Instant Action

Plaintiff filed this action on July 13, 2015. (D.I. 1) After Defendants filed a motion to dismiss one claim of Plaintiff's Complaint (D.I. 13), the parties entered into a stipulation to extend certain deadlines, including that for filing a proposed Scheduling Order. (D.I. 16) The stipulation also permitted Plaintiff to file an amended complaint by December 1, 2015, which

Plaintiff did, mooting the motion to dismiss the original complaint. (D.I. 17) Thereafter, Defendants moved to dismiss from the amended complaint Plaintiff's claims based on 35 U.S.C. § 271(g), that is, infringement stemming from "a product which is made by a process patented in the United States." (D.I. 24) The parties submitted a proposed Scheduling Order on December 23, 2015. (D.I. 21) Briefing on Defendants' second motion to dismiss was completed on February 1, 2016. (D.I. 29)

On February 10, 2016, Magistrate Judge Burke held a Case Management Conference ("CMC") pursuant to Federal Rule of Civil Procedure 16. (D.I. 32) At the CMC, Judge Burke: (1) resolved scheduling disputes; (2) ordered the parties to submit a revised proposed Scheduling Order by February 16, 2016; and (3) heard argument on Defendants' motion to dismiss the amended complaint. (*Id.*) Judge Burke entered the Scheduling Order on February 17, 2016. (D.I. 31) Among other things, it schedules a claim construction hearing for January 23, 2017 (*id.* at ¶ 14), requires fact discovery to be completed by April 17, 2017 (*id.* at ¶ 8(a)), and sets trial to begin on March 12, 2018 (*id.* at ¶ 22).

By January 6, 2016, Plaintiff had identified exemplary Accused Products, the asserted claims each of these products allegedly infringe, and its damages model. (*Id.* at ¶ 7(a); D.I. 55 at 2) On March 18, 2016, Defendants served their initial disclosures to Plaintiff; they produced their core technical documents relating to the exemplary Accused Products on March 22, 2016. (D.I. 33; D.I. 55 at 2-3) A few days later, Plaintiff produced its initial disclosures to Defendants. (D.I. 36) In April 2016, Plaintiff served its initial claim charts. (D.I. 39) In June 2016, Defendants provided their initial invalidity contentions. (D.I. 44) That same month the Court resolved the parties' disputes regarding a proposed Protective Order (*see* D.I. 47) and then

entered a Protective Order (D.I. 49).

On July 13, 2016, Defendants filed their pending Motion to stay. (D.I. 50) Briefing on the Motion was completed on August 11, 2016. (D.I. 57)[1]

### 2. The IPR Proceedings

On December 30, 2015, while this litigation was proceeding toward a CMC, Defendants filed their petitions for IPR, asking that the United States Patent and Trademark Office's ("PTO") Patent Trial and Appeal Board ("PTAB") review the validity of every claim of the '102 patent, every claim of the '380 patent, and all but one claim (claim 2) of the '305 patent. (D.I. 51 at 4)[2] On July 6, 2016, the PTAB decided to institute IPR proceedings as to every claim asserted in this litigation. (*Id.*; *see also* D.I. 52 Ex. B at 42, Ex. C at 33, Ex. D at 38) The PTAB will be determining whether the patents-in-suit are obvious, pursuant to 35 U.S.C. § 103, in light of various pieces of prior art. (*See* D.I. 52 Ex. B at 42, Ex. C at 33, Ex. D at 38) The PTAB is scheduled to hear oral argument (if requested) on March 30, 2017, and is statutorily required to issue its Final Written Decisions by July 6, 2017. (*See* D.I. 52 Exs. E-G; 35 U.S.C. § 316(a)(11))

## II. LEGAL STANDARDS

A court has discretionary authority to grant a motion to stay. *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). Typically, courts consider three factors in

---

[1] The Motion was previously referred to Judge Burke, who had heard oral argument on the motion to dismiss, which was also referred to him. (*See* D.I. 32) However, given the Court's decision to grant the stay, which renders unripe the issues presented in the motion to dismiss, the Court has by separate order today withdrawn the referral of these motions. (D.I. 70)

[2] In connection with the stipulation that allowed Plaintiff to file an amended complaint by December 1, 2015, Plaintiff asked Defendants not to file an IPR until after December 1. (*See* D.I. 51 at 1)

deciding how to exercise this discretion: (1) whether a stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage. *See, e.g.*, *Advanced Microscopy Inc. v. Carl Zeiss Microscopy, LLC*, 2016 WL 558615, at *1 (D. Del. Feb. 11, 2016).

### III.  DISCUSSION

As Defendants request, the Court will stay this action pending resolution of the three instituted IPR proceedings. (D.I. 50) The Court explains its reasoning below.

#### A.  Simplification of Issues for Trial

There is a very strong likelihood that the IPR proceedings will simplify the issues for trial. This is primarily because the PTAB has granted review with respect to every asserted claim of all three patents-in-suit. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1314 (Fed. Cir. 2014) (noting that simplification factor "weigh[ed] heavily in favor of a stay" where "the PTAB granted CBM review on **all** asserted claims of the **sole** asserted patent"); *Sirona Dental Sys. GmbH v. Dental Wings Inc.*, C.A. No. 14-460-LPS-CJB D.I. 67 at 9-10 (D. Del. March 30, 2016). Thus, for example, were the PTAB to find all of the challenged claims to be invalid, the "litigation would be 'simplified' because it would be concluded." *Softview LLC v. Apple Inc.*, 2013 WL 4757831, at *1 (D. Del. Sept. 4, 2013); *see also Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013). "Alternatively, should even some of the asserted claims be found invalid, that finding would reduce the number of issues left to be

litigated." *Softview LLC*, 2013 WL 4757831, at *1.[3] Even if the IPR proceedings result in all of the Asserted Claims remaining valid, the fact that Defendants will be estopped – from asserting in this litigation any ground for invalidity that they "raised or reasonably could have raised" during the IPR proceedings, 35 U.S.C. § 315(e)(2); *see also Gen. Elec. Co. v. Vibrant Media, Inc.*, 2013 WL 6328063, at *1 (D. Del. Dec. 4, 2013) – and the creation of additional prosecution history, *see Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, 2014 WL 1369721, at *5 (D. Del. Apr. 7, 2014), will simplify the issues left to be litigated in this case.

Plaintiff correctly points out that the IPR proceedings will not address a number of the defenses that Defendants have raised in this litigation, including: (1) that the claims are patent ineligible under 35 U.S.C. § 101; (2) that they are invalid pursuant to 35 U.S.C. § 112; and (3) that the Accused Products do not infringe the patents-in-suit. (D.I. 55 at 10) Another legal issue that will go untouched in the IPR proceedings is Plaintiff's argument that Defendants are barred from challenging the validity or unenforceability of the patents-in-suit due to the doctrine of assignor estoppel. (D.I. 55 at 11-12; *see also* D.I. 20 at 1-2)[4] Nevertheless, on the whole, the IPR is very likely to substantially simplify the issues left to be litigated in this case, resulting in

---

[3]As of July 31, 2016, 1,738 IPR trials have been instituted, and only 158 of the trials that reached a final written decision (9% of trials instituted) resulted in none of the challenged claims being found unpatentable. *See* United States Patent and Trademark Office, *Patent Trial and Appeal Board Statistics* 10 (July 31, 2016), http://www.uspto.gov/sites/default/files/documents/2016-07-31%20PTAB.pdf.

[4]In rendering its institution decisions, the PTAB declined to address this assignor estoppel issue. (D.I. 52 Ex. B at 7, Ex. C at 6; Ex. D at 37-38) The Court remains willing to consider an "early" summary judgment motion on this issue, if Plaintiff requests, once the stay being imposed is lifted. (*See* D.I. 31 at ¶ 17) For now, the most pertinent point is that the stay results in neither the parties nor the Court needing to devote additional resources to the assignor estoppel issue until after the IPR proceedings are complete. (*See* D.I. 57 at 2)

the first factor weighing heavily in favor of a granting a stay. *See Bonutti*, 2014 WL 1369721, at *5 (denying that "the issues in the IPR [must] be identical to those in the litigation" for simplification factor to favor stay); *see also Emed Techs. Corp. v. Repro-med Sys., Inc.*, 2016 WL 2758112, at *2 (E.D. Tex. May 12, 2016) ("When IPR is instituted on all asserted claims and when all defendants are bound by the estoppel provisions of 35 U.S.C. § 315, this [simplification] factor generally favors a stay . . . .").

    **B.    Status of Litigation**

Granting a stay relatively early in a case can be said to advance judicial efficiency and "maximize the likelihood that neither the Court . . . nor the parties expend their assets addressing invalid claims." *Gioello Enters. Ltd. v. Mattel, Inc.*, 2001 WL 125340, at *2 (D. Del. Jan. 29, 2001). On the other hand, when a request for review comes after discovery is complete or nearly complete, and a trial is imminent, a stay is less likely to be warranted. *See, e.g., Oracle Corp. v. Parallel Networks, LLP*, 2010 WL 3613851, at *2 (D. Del. Sept. 8, 2010). In such circumstances, the Court and the parties have already expended significant effort on the litigation, and the principle of maximizing the use of judicial and litigant resources may best be served by seeing the case through to its conclusion.

Here, the Court agrees with Defendants that, despite the entry of a scheduling order and protective order (which required judicial resolution of disputed terms), "this case is still in its very early stages and much work remains to be done that could be averted by a stay." (D.I. 51 at 16) There has as yet been no written or deposition discovery, no claim construction briefing, and no decision on the pending motion to dismiss (although it was fully briefed and argued). Trial here is scheduled for March 12, 2018, fully sixteen months away. It is true, as Plaintiff observes

that the parties have produced a large number of initial disclosure documents and initial contentions. (*See* D.I. 55 at 12) Even so, while the "amount of effort" that has been expended on this litigation must be factored into the Court's consideration, the status of the litigation still favors grant of a stay, "albeit not as strongly as it would if the case was at i[t]s most nascent stages." *SenoRx, Inc. v. Hologic, Inc.*, 2013 WL 144255, at *6 (D. Del. Jan. 11, 2013); *see also Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, 2016 WL 3437605, at *3 & n.3 (D. Del. June 17, 2016) (concluding this factor favored stay where schedule and protective order had been entered, initial disclosures exchanged, and some initial discovery produced).

This conclusion is confirmed by the fact that the IPR proceedings are, relatively, mature. The IPR proceedings are set for oral argument (if requested) on March 30, 2017, and will be decided (almost certainly) no later than July 2017. The requested stay, therefore, is almost certainly likely to last no longer than eight months.

Accordingly, the second factor favors a stay.

C. **Prejudice**

In assessing whether Plaintiff will be prejudiced by the requested stay, the Court may consider: (1) the timing of the request for review; (2) the timing of the request for a stay; (3) the status of the review proceeding; and (4) the relationship of the parties. *See, e.g., Neste Oil OYJ v. Dynamic Fuels, LLC*, 2013 WL 3353984, at *2 (D. Del. July 2, 2013). Here, based on these considerations, the Court concludes that Plaintiff will likely not suffer much prejudice from the stay.

Defendants filed both their IPR petitions and their stay Motion at times that neither unduly prejudiced Plaintiff nor suggest that Defendants were seeking an unfair tactical

advantage. Defendants filed their petitions less than six months into litigation and well within the one-year statutory window. *See* 35 U.S.C. § 315(b). Defendants filed their Motion shortly after the PTAB issued its decisions to proceed with a validity trial on all of the Asserted Claims, which is generally the ideal time at which to file such a request. *See Sirona Dental*, C.A. No. 14-460-LPS-CJB D.I. 67 at 17; *Copy Prot. LLC v. Netflix, Inc.*, 2015 WL 3799363, at *1 (D. Del. June 17, 2015) ("Generally, the simplification issue does not cut in favor of granting a stay prior to the time the PTAB decides whether to grant the petition for inter partes review.") (internal quotation marks omitted).

As for the status of the IPR proceedings, as already noted the PTAB is expected to issue its final written decisions in all three IPR proceedings by July 6, 2017. (D.I. 52 Exs. B-D) The Court recognizes that the stay it is entering today is going to delay the progress of the instant case by approximately eight months, almost certainly making the current March 2018 trial date impractical. While the "mere potential for delay is insufficient to establish undue prejudice," *Nexans Inc. v. Belden Inc.*, 2014 WL 651913, at *2 (D. Del. Feb. 19, 2014), it is not irrelevant to the Court's calculus, *see Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, 2015 WL 1737476, at *4 (D. Del. Apr. 9, 2015); *Neste Oil*, 2013 WL 3353984, at *2. Still, the status of the IPR favors Defendants here.[5]

Finally, with respect to the relationship among the parties, the record supports a conclusion that the parties engage in some degree of direct competition, and this fact disfavors

---

[5] Also pending before the Court in a separate action is an interference review involving the '102 patent that is one of the patents-in-suit here. (*See* C.A. No. 13-1853-LPS) Regardless of when the Court issues a decision in that other matter, and regardless of which way it comes out, the Court notes that the result of that case could affect this case. (*See* D.I. 51 at 11)

granting a stay. *See, e.g., SenoRx*, 2013 WL 144255, at \*7 (citing *Nat'l Prods., Inc. v. Gamber-Johnson LLC*, 2012 WL 3527938, at \*2-3 (W.D. Wash. Aug. 14, 2012)). Plaintiff argues that a stay will impose undue hardship on it because Defendant Ion Torrent's Accused Products "compete with products sold by both [Plaintiff] and with other products sold by 454's corporate affiliates." (D.I. 55 at 5; *see also* D.I. 56 at ¶¶ 9, 14-15 (Declaration of Dr. Rebecca R. Selzer, General Manager of Roche Sequencing Solutions, explaining that Plaintiff continues to sell its products through another corporate affiliate, Roche Diagnostics Corporation))[6] Defendants do not appear to dispute that Plaintiff has provided at least some evidence of a competitive relationship between Plaintiff and one of the Defendants. Rather, Defendants assert that there "is no *persuasive* evidence of any *meaningful* competition," such that this subfactor strongly favors a stay. (D.I. 57 at 8) (emphasis added) Defendants predicate this position on what they characterize as Plaintiff's slow pace in choosing to litigate (waiting to sue until three years after licensing discussions), the fact that Plaintiff did not seek a preliminary injunction and its damages model seeks reasonable royalties and not lost profits, and evidence that Ion Torrent's products are neither "marketed for use in [454's] sequencing workflows" nor are "intended to be compatible with 454's sequencing workflows." (D.I. 51 at 11-12; D.I. 57 at 3-5; D.I. 58 at ¶¶ 3-

---

[6]The parties dispute whether it is proper for the Court to include Plaintiff's "corporate affiliates"in its "relationship of the parties" analysis. (D.I. 51 at 13-14; D.I. 57 at 6-7) Defendants note that to consider non-party, corporate affiliates would "conflict with the Court's general practice when assessing the undue prejudice factor, which is to determine whether the *parties* are direct competitors." *Contour IP Holding, LLC v. GoPro, Inc.*, Civil Action No. 15-1108-LPS-CJB D.I. 70 at 8 n.4 (D. Del. July 14, 2016) (emphasis in original; internal quotation marks omitted). Because it does not affect the outcome – the Motion should be granted even if the relationship among the parties is viewed as including competition actually engaged in by Plaintiff's "corporate affiliates" – the Court assumes, without deciding, that it should include this competition in its analysis.

4) In the Court's view, the record as a whole suggests at least some competitive relationship between Plaintiff and Defendant Ion Torrent. *See FMC Corp. v. Summit Agro USA, LLC*, 2014 WL 3703629, at *5 (D. Del. July 21, 2014) (finding parties were competitors where, "to at least some degree," defendants' product performed "similar function" to certain of plaintiff's products). It follows that the stay may cause some amount of competitive harm to Plaintiff, although that harm does not appear to be of overwhelming significance. *See TSST-K*, 2016 WL 3437605, at *6 (concluding that, despite being "undisputed that [] the parties compete[d] for business against each other," this subfactor weighed in favor of stay where "money damages could adequately compensate the patentee for harm due to infringement").

As three of the subfactors weigh in favor of a stay, and one weighs against a stay, the Court finds that the "undue prejudice" factor favors a stay.

## IV.  CONCLUSION

For the reasons stated above, the Court will grant Defendants' Motion and will stay this action pending resolution of the IPR Proceedings. IT IS HEREBY ORDERED that:

1. Defendants' Motion (D.I. 50) is GRANTED.

2. This proceeding is STAYED from the date of this order until decisions are issued by the PTAB in the IPR proceedings. The parties shall timely advise the Court when such decisions are issued.

3. Defendants' motion to dismiss (D.I. 24) is DENIED WITHOUT PREJUDICE as MOOT in light of the Court's decision to stay the matter.

November 7, 2016  
Wilmington, Delaware

HONORABLE LEONARD P. STARK  
UNITED STATES DISTRICT JUDGE